IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMIE L. V.,[1]
    Plaintiff,

        v.                                                                     Civil No. 3:20cv263 (REP-EWH)

KILOLO KIJAKAZI,[2]
Commissioner of Social Security,
    Defendant.

## MEMORANDUM OPINION

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying the application of Jamie L. V. ("Plaintiff") for disability insurance benefits and supplemental security income under the Social Security Act. Plaintiff, thirty-five years old at the time of her benefits application, previously worked as a cashier and store manager. (R. at 26, 225-232, 852.) Plaintiff suffers from lupus erythematosus, sarcoidosis, obesity, bipolar disorder, obsessive compulsive disorder, and attention deficit disorder without hyperactivity. (R. at 843.)

On February 4, 2020, an Administrative Law Judge ("ALJ") denied Plaintiff's application for benefits. (R. at 840–54.) Plaintiff now seeks judicial review of the ALJ's decision, asserting that the ALJ erred in assessing Plaintiff's asserted blackouts, which Plaintiff described as a period of time in which she "star[es] off" or "look[s] like a zombie." (R. at 52–53.) Specifically, Plaintiff argues that the ALJ erred in (1) failing to obtain an updated medical opinion regarding Plaintiff's

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.
[2] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner Kilolo Kijakazi should be substituted for former Commissioner Andrew M. Saul as the defendant in this matter.

asserted blackouts, resulting in a residual functional capacity that is unsupported by substantial evidence; and (2) determining that such blackouts were not a "medically determinable" or severe impairment at step two of the sequential evaluation process. (Pl.'s Opening Br. 10–15, ECF No. 19 ("Pl.'s Mem.").)

This matter is before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1) on the parties' cross-motions for summary judgment, rendering the matter ripe for review.[3] For the reasons that follow, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 18), GRANTS Defendant's Motion for Summary Judgment (ECF No. 20), and AFFIRMS the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

On September 14, 2014, Plaintiff filed applications for disability insurance benefits and supplemental security income, with an alleged disability onset date of June 28, 2014. (R. at 71, 99–100, 135–36.) The Social Security Administration denied Plaintiff's claim initially on April 28, 2015, and again upon reconsideration on October 5, 2015. (R. at 99–100, 135–36.)

An ALJ held a hearing on May 12, 2017, where Plaintiff and a vocational expert testified. (R. at 34–67.) Of note, Plaintiff testified that she started suffering from blackouts in summer 2016, and that her neurologist said she was having "mini-blackouts throughout the day." (R. at 52.) Plaintiff testified that she was prescribed a seizure-preventative drug to treat the blackouts, and the drug reduced her blackouts to about one or two a week. (R. at 51–52.) She stated that she is not

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

aware of the blackouts, but her children have told her that she tenses up, her eyes widen, and she "look[s] like a zombie." (R. at 52–53.) She testified that her "eyes are open, but . . . [she's] not responding" and that she "just star[es] off." (R. at 52-53.)

The ALJ issued an initial decision on October 30, 2017, finding Plaintiff not disabled. (R. at 16–33.) The ALJ did not mention Plaintiff's asserted blackouts in the decision. (R. at 16–33.) The Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision on May 2, 2018. (R. at 1–6.) Plaintiff appealed the denial to this Court, arguing that the ALJ erred in failing to hold that her impairments were medically equivalent to Listing 14.02, finding that her statements regarding her symptoms were inconsistent with the evidence, affording improper weight to certain medical opinions, and relying on an incomplete hypothetical at step five. (R. at 885–87, 893–94.)

This Court remanded the case to the Commissioner via a memorandum opinion entered on June 6, 2019. (R. at 893–927); *see also Jamie L. V. v. Berryhill*, No. 3:18cv458, 2019 WL 2397253 (E.D. Va. June 6, 2019). This Court found that the ALJ did not err in finding that Plaintiff's impairments did not equal Listing 14.02. (R. at 899.) However, this Court held that the ALJ failed to adequately explain why Plaintiff's statements regarding her symptoms were inconsistent with the evidence. (R. at 911-17.) Specifically, this Court noted the ALJ failed to explain why Plaintiff's non-compliance with some prescription medications undermined her subjective complaints of pain, given that Plaintiff had potentially legitimate reasons for refusing such medications. (R. at 914–16.) In addition, this Court noted that the ALJ did not fully explain how Plaintiff's ability to exercise undermined her complaints of pain and other symptoms. (R. at 916.) Finally, this Court found that the ALJ failed to explain the weight given to state agency consultant opinions because

the ALJ summarily refused to give weight to certain opinions without identifying their inconsistencies with the record. (R. at 917, 925–26.)

On remand, a different ALJ held a second hearing on December 9, 2019. (R. at 860–77.) At the hearing, the ALJ and counsel for Plaintiff had the following exchange:

> ALJ: Is the record complete?
>
> ATTY: No, Your Honor. . . . We're still waiting on records from Dr. [Alfred] Boulware [], who's her family practitioner, but he's basically treating her for pretty much everything. My understanding is she's been seeing him approximately every three and a half weeks since May 2017. My understanding is *those records are, are – the only thing new in terms of a diagnosis* [sic] is going to show that she was diagnosed with the fibromyalgia on top of the lupus and the sarcoidosis.
> Additionally, there are some additional records from Spotsylvania Medical Center. . . . So, those are the records I'm still waiting on.

(R. at 863–64 (emphasis added).) The ALJ agreed to keep the administrative record open for thirty days following the hearing for submission of those additional records. (R. at 841, 865.) Plaintiff subsequently testified regarding her symptoms and limitations, but she did not mention her blackouts. (R. at 865–74.)

On December 11, 2019, Plaintiff submitted additional medical evidence from Spotsylvania Regional Medical Center into the record. (R. at 953–59.)

On February 4, 2020, the ALJ issued a written decision accepting the newly-admitted medical evidence but finding Plaintiff not disabled. (R. at 840–54.) Plaintiff did not file written exceptions to the ALJ's decision, and the Appeals Council did not assume jurisdiction (Pl.'s Mem. at 2), which rendered the ALJ's decision as the final decision of the Commissioner. Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. THE ALJ'S DECISION

The ALJ's written opinion on February 4, 2020 concluded that Plaintiff did not qualify as disabled and denied her benefits. (R. at 840–54.) The ALJ followed the five-step evaluation process established by the Social Security Act to determine whether a disability exists. (R. at 41–53); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (describing the five-step sequential evaluation).

According to those regulations, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant's medical impairments meet or equal an impairment in the Listings.[4] §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see* Pt. 404, Subpt. P, App. 1. Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most that the claimant can do despite her physical and mental limitations. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

In the instant case, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 28, 2014, which is the alleged onset date of her impairments. (R. at 843.)

---

[4] The Listings are a regulatory appendix of "the major body systems impairments that [the Social Security Administration] consider[s] to be severe enough to prevent an individual from doing any gainful activity." §§ 404.1525(a), 416.925(a).

5

At step two, the ALJ concluded that Plaintiff suffers from lupus erythematosus, sarcoidosis, obesity, bipolar disorder, obsessive compulsive disorder, and attention deficit disorder without hyperactivity, which all significantly limit Plaintiff's ability to perform basic work activities. (R. at 843.) Relevant to the present appeal, the ALJ noted Plaintiff's August 2016 appointment with a neurologist where she complained of frequent blackouts and her testimony at the May 2017 hearing that she was experiencing one to two blackouts per week. (R. at 844.) The ALJ concluded, however, that Plaintiff's blackouts were not medically determinable. (R. at 844.) The ALJ reasoned that the August 2016 neurological examination was "unremarkable" and a brain MRI a month later was normal. (R. at 844.) The ALJ further explained that, despite Plaintiff's testimony about experiencing blackouts, "there is no evidence of this in the record," "her blackout spells have not been observed, and there are no objective findings showing the presence of any type of impairment that could cause these." (R. at 844.)

At step three, the ALJ determined that none of Plaintiff's impairments, individually or in combination, met or equaled a disability listing in the Listings. (R. at 844.) Specifically, the ALJ held that Plaintiff's impairments did not meet or equal Listings 14.02 (systemic lupus erythematosus), 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorder), and 12.11 (neurodevelopmental disorders). (R. at 844–45.)

After step three, the ALJ determined that Plaintiff has the residual functional capacity to perform sedentary work with the following nonexertional limitations:

> [S]he can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. She cannot crawl or climb ladders, ropes, or scaffolds. She can frequently handle and finger with the bilateral upper extremities. She cannot tolerate exposure to temperature extremes or hazards. She can understand, remember, and carry out simple instructions and make simple work-related decisions. She can work at a consistent pace throughout the workday, but not at a production rate pace where tasks must be performed quickly, such as that found on an assembly line or conveyor belt. She can tolerate occasional changes in the work setting.

(R. at 846.)

In rendering this residual functional capacity determination, the ALJ relied on Plaintiff's testimony at the May 2017 and December 2019 hearings, medical records from August 2011 to May 2017, and several medical opinions, including a May 2017 opinion from Maria Rivera, M.D. (R. at 847–52.) Dr. Rivera's opinion—which was a response to medical interrogatories—asserted that "blackout spells" constituted one of Plaintiff's medical impairments. (R. at 833.) The ALJ concluded, however, that the evidence in the record did not support the presence of blackouts. (R. at 851.)

At step four, the ALJ concluded that Plaintiff is unable to perform her past relevant work as a cashier. (R. at 852.)

At step five, the ALJ held that there were jobs that existed in significant numbers in the national economy for Plaintiff to perform. (R. at 852.) The ALJ agreed with the vocational expert's testimony that, despite Plaintiff's residual functional capacity limitations, Plaintiff could perform jobs that existed in significant numbers in the national economy, such as addresser, call out operator, and charge account clerk. (R. at 853.) The ALJ therefore concluded that the Plaintiff was not disabled. (R. at 853.)

### III. STANDARD OF REVIEW

This Court upholds an ALJ's Social Security disability determination if "(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020) (citing 42 U.S.C. § 405(g) and *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Pearson*, 810 F.3d at 207 (internal quotation marks omitted). Substantial evidence thus requires more than a scintilla of

evidence, but less than a preponderance of the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Between these two evidentiary thresholds lies a "zone of choice" where the ALJ's decision can go either way without interference by the courts. *See Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988)). "'In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment' for the ALJ's." *Arakas*, 983 F.3d at 95 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).

## IV. ANALYSIS

Plaintiff advances two narrow arguments. First, Plaintiff argues that the ALJ failed to obtain an updated medical opinion regarding Plaintiff's asserted blackouts and that such failure resulted in a residual functional capacity that is unsupported by substantial evidence. (Pl.'s Mem. at 10–12.) Second, Plaintiff argues the ALJ erred at step two in concluding that Plaintiff's asserted blackouts were not a "medically determinable" or severe impairment. (Pl.'s Mem. at 12–14.)

For the reasons stated below, this Court finds that the ALJ did not err in denying Plaintiff's application for benefits. Specifically, the ALJ did not violate his duty to develop the factual record by failing to obtain an updated medical opinion because Plaintiff did not inform the ALJ of the need for such updated opinion. The ALJ also did not err at step two because he properly concluded that Plaintiff's blackouts were not a "medically determinable" impairment. This Court addresses each of Plaintiff's two arguments in turn.

### A. The ALJ Was Not Required to Obtain an Updated Medical Opinion.

Plaintiff argues that substantial evidence does not support the ALJ's opinion denying her benefits because the ALJ failed to obtain an updated medical opinion regarding Plaintiff's blackouts. (Pl.'s Mem. at 12.) Plaintiff contends that the ALJ had the duty to obtain an updated

8

medical opinion because the most recent medical opinion in the record was rendered in 2015, which was before both the onset of Plaintiff's blackouts in 2016 and the ALJ's decision in 2020. (Pl.'s Mem. at 11–12.) Plaintiff asserts: "there is no indication the ALJ even attempted to re-contact one of Plaintiff's treating physicians to obtain an updated medical opinion regarding her ability to function as of 2019, send Plaintiff for an updated [consultative examination], or even obtain the testimony of a medical expert." (Pl.'s Mem. at 12.)

Defendant responds that Plaintiff has the burden to present evidence establishing disability and that Plaintiff never asked for further development of the record or additional consultative examination. (Def.'s Mot. For Summ. J. and Br. in Supp. Thereof 14–15, ECF No. 20 ("Def.'s Mem.".) Defendant notes that the ALJ held the record open for thirty days following the December 2019 evidentiary hearing, yet Plaintiff did not submit any additional medical opinions. (Def.'s Mem. at 16.) Defendant also contends that the record was otherwise sufficient for the ALJ to fully assess Plaintiff's disability claim, and the ALJ adequately examined and analyzed this record. (Def.'s Mem. at 17.)

The Social Security administrative hearing process is not adversarial, and the ALJ's role is to both decide issues and to develop the record. *See Pearson,* 810 F.3d at 210 (citing *Cook v. Heckler,* 783 F.2d 1168, 1173–74 (4th Cir. 1986)); *see also Gray v. Apfel*, No. 98-2576, 1999 WL 710362, at *1 (4th Cir. Sept. 13, 1999) ("Social Security ALJ's are not simply arbiters, but also inquisitors."). The ALJ, for example, has a duty to investigate the facts and develop the record "independent of the claimant or his counsel." *Pearson*, 810 F.3d at 210 (4th Cir. 2015) (citing *Cook,* 783 F.2d at 1173–74).

"However, an ALJ is 'not required to function as the claimant's substitute counsel, but *only to develop* a reasonably complete record.'" *Eva L. v. Saul*, No. 1:20CV0162, 2020 WL 5648324,

9

at *18 (E.D. Va. Sept. 22, 2020) (emphasis added) (quoting *Clark v. Shalala*, 28 F.3d 828, 830–31 (8th Cir. 1994)); *see also Zook v. Comm'r of Soc. Sec.*, No. 2:09CV109, 2010 WL 1039456, at *4 (E.D. Va. Feb. 25, 2010) (same), *report and recommendation adopted sub nom. Zook v. Astrue*, No. 2:09CV109, 2010 WL 1039830 (E.D. Va. Mar. 18, 2010). The claimant still retains the burden to prove that he or she is disabled. §§ 404.1512(a)(1), 416.912(a)(1). The regulations therefore require the claimant to "inform . . . or submit" to the Commissioner all evidence known to the claimant that relates to the alleged disability. *Id*. "This duty is ongoing and requires [the claimant] *to disclose any additional related evidence about which* [*the claimant*] *become*[*s*] *aware*." §§ 404.1512(a)(1), 416.912(a)(1) (emphasis added).

Stated succinctly, the ALJ has a duty to assist the claimant in *developing* the factual record, but the claimant must trigger such duty by fulfilling his or her own burden to *inform* the ALJ of the evidence to be developed or to submit the evidence directly. *See* §§ 404.1512(a)(1), 416.912(a)(1); *see also Richardson v. Perales*, 402 U.S. 389, 410 (1971) ("The social security hearing examiner, furthermore, does not act as counsel. He acts as an examiner charged with developing the facts.").

In *Hart v. Astrue*, for instance, a claimant argued that the ALJ failed to adequately develop the record in part because there was a "lack []of medical records" within twenty-one months of the ALJ's hearing. No. 2:08CV56, 2009 WL 1163989, at *4–*5 (E.D. Va. Apr. 27, 2009). This Court specifically noted:

> There is nothing in the record to indicate that this lack of medical records was due to [the claimant] being unable to appropriately treat his medical conditions or [the claimant] not submitting medical records. Rather, it appears that . . . [the claimant] simply did not seek medical treatment regarding anything [the claimant] deemed relevant to the Commissioner's evaluation of his disability claim. Moreover, *it was incumbent upon* [*the claimant*] *to submit all relevant medical records, and the ALJ left the record open for thirty days* [*following the ALJ hearing*] *for him to do so*.

10

*Id.* (emphasis added). The Court accordingly held that the ALJ did not err in failing to advise the claimant to provide additional medical records from this twenty-one month period. *Id.* at *5. *Hart* thus reflects the regulations' division of responsibilities between the ALJ and the claimant to build the administrative record. The ALJ will assist the claimant with developing the factual record, but the claimant must fulfill his or her own burden to inform the ALJ about the evidence to be developed or to submit the evidence independently. *See* §§ 404.1512(a)(1), 416.912(a)(1).

In the instant case, the ALJ adequately fulfilled his duty to develop the administrative record. At the hearing, Plaintiff's counsel informed the ALJ that Plaintiff wished to submit additional records from Dr. Boulware and from the Spotsylvania Medical Center. (R. at 863–64.) Plaintiff's counsel specified that Dr. Boulware's records were "the only [] new" records regarding a diagnosis, and such records would show that Plaintiff was diagnosed with fibromyalgia. (R. at 864.) Thus, as of the December 2019 hearing, Plaintiff's purported fibromyalgia diagnosis was the only remaining diagnosis that needed further factual development. The ALJ then allowed Plaintiff to submit additional records for thirty days after the hearing. While Plaintiff later submitted records, Plaintiff did not alert the ALJ to any need for additional medical opinions concerning Plaintiff's blackouts at the hearing or within the thirty-day period afterward. In fact, Plaintiff did not mention her blackouts at her December 2019 hearing testimony.

While the ALJ has a duty to assist Plaintiff "develop" the factual record, the Plaintiff must "inform" the ALJ of the facts that need to be developed, including disclosing the existence of "any additional related evidence about which you become aware." *See* §§ 404.1512(a)(1), 416.912(a)(1). Like the claimant in *Hart*, Plaintiff did not inform the ALJ that more facts regarding

Plaintiff's blackouts needed to be developed, and therefore the ALJ sufficiently fulfilled his duty in assisting Plaintiff develop the administrative record.[5]

Plaintiff also argues that the ALJ had a duty to re-contact Plaintiff's treating physicians for an updated medical opinion or order another examination by a state consultant. (Pl.'s Mem. at 12.) The regulations, however, do not support Plaintiff's arguments. The regulations state that the Commissioner "*may* recontact your medical source" and "*may* ask you to undergo a consultative examination," if there is insufficient evidence to determine whether a claimant is disabled. §§ 404.1520b(b)(2)(i) & (iii), 416.920b(b)(2)(i) & (iii) (emphases added). The regulations note that the Commissioner "will try to resolve" any evidentiary insufficiency, though the Commissioner "might not take all of the [above] actions." §§ 404.1520b(b)(2), 416.920b(b)(2).

By including the terms "may" or "try," these regulations afford the Commissioner or ALJ discretion to re-contact a medical source or order a consultative examination.[6] Considering that

---

[5] Although Plaintiff seeks to distinguish *Hart* by arguing that Plaintiff here did not have *access* to a missing updated medical opinion (Pl.'s Reply to Def.'s Mot. For Summ. J. 3, ECF No. 21), the facts in *Hart* are nearly identical. The claimant in *Hart* specifically argued that the ALJ failed to adequately develop the record because there was a "*lack* []*of* medical records" from a twenty-one month period prior to the ALJ's hearing. 2009 WL 1163989, at *4 (emphasis added). The Court observed that the claimant could have sought additional treatment or records to supplement the records from this period. *Id*. Like in *Hart*, there is nothing in the record here showing that Plaintiff was unable to seek another medical examination or submit additional updated medical records concerning her blackouts ahead of the December 2019 hearing or for the thirty days that the ALJ kept the record open.

[6] The Court notes that the Social Security Administration intentionally changed this regulation from mandatory to discretionary terms. The regulations used to state: "When the evidence we receive from your . . . medical source is inadequate . . . (1) We *will* first recontact your . . . medical source . . . ." 20 C.F.R. §§ 404.1512(e)(1), 416.1512(e)(1) (2011) (emphasis added). The regulations were then revised to replace "will" with "may." 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1) (2014). The Social Security Administration explained:

> We are modifying the requirement to recontact your medical source(s) first when we need to resolve an inconsistency or insufficiency in the evidence he or she provided. . . . *By giving adjudicators more flexibility* in determining how best to

12

Plaintiff did not alert the ALJ to any new development concerning Plaintiff's blackouts, nor request the ALJ to re-contact medical sources or order another consultative examination, the ALJ did not abuse his discretion here in failing to re-contact Plaintiff's treating physicians or obtain another state consultant examination.

In sum, the ALJ did not err in failing to acquire an updated medical opinion regarding Plaintiff's blackouts. Plaintiff did not mention the blackouts at her December 2019 hearing testimony, nor inform the ALJ of any need for an updated medical opinion ahead of such hearing or for the thirty days afterward that the ALJ kept the record open. The ALJ therefore adequately fulfilled his duty to develop the administrative record.

**B. The ALJ Did Not Err At Step Two in Determining Plaintiff's Blackouts Were Not "Medically Determinable" or Severe.**

Plaintiff also argues that the ALJ erred in determining that Plaintiff's blackouts were not "medically determinable" or severe at step two of the sequential evaluation process. (Pl.'s Mem. at 13–14.) Specifically, Plaintiff contends that the ALJ erred in requiring objective evidence of Plaintiff suffering her blackouts, in the form of notations in Plaintiff's medical records; not acknowledging that Plaintiff's lupus could cause blackouts; and ignoring the fact that Plaintiff had been diagnosed with "complex partial seizures" and was prescribed a seizure-preventative drug. (Pl.'s Mem. at 14.)

Defendant argues the ALJ properly concluded that Plaintiff's asserted blackouts were not medically attributable to her impairments. (Def.'s Mem. at 18.) Defendant contends that the ALJ properly relied on normal findings in Plaintiff's brain MRI and electroencephalogram results and

---

obtain this information, we will be able to make a determination or decision on disability claims more quickly and efficiently in certain situations.

77 Fed. Reg. 10651-01, 2011 WL 7404303, at *10651 (Feb. 23, 2012) (emphasis added).

that no doctor has observed Plaintiff suffering from a blackout. (Def.'s Mem. at 19–20.) Finally, Defendant argues that any error at step two is harmless given Plaintiff's restrictive residual functional capacity determination. (Def.'s Mem. at 20–21.)

At step two, the ALJ considers the "medical severity" of the claimant's "medically determinable" impairments. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). To constitute a "medically determinable" impairment, the claimant's alleged impairment "must be established by *objective medical evidence* from an acceptable medical source."[7] §§ 404.1521, 416.921. "[O]bjective medical evidence" means "laboratory findings" or "abnormalities that can be observed, apart from your statements (symptoms)." §§ 404.1502(f) & (g), 416.902(f) & (g). The ALJ "will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." §§ 404.1521, 416.921.

If an impairment is medically determinable, the ALJ then determines whether such impairment is "severe." *Id*. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c), 404.1522(a), 416.922(a). Additionally, "[u]nless [the claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months" to be "severe." §§ 404.1509, 416.909, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

In the instant case, at step two, the ALJ concluded that "the evidence is not sufficient to establish that [Plaintiff] has any type of medically determinable blackout spells." (R. at 844.) The ALJ noted that Plaintiff complained to a neurologist in August 2016 about frequent blackouts, but that a subsequent examination, MRI, and electroencephalogram revealed normal findings. (R. at

---

[7] An "acceptable medical source" includes a licensed physician, psychologist, or other qualifying medical professional. §§ 404.1502, 416.902.

14

844.) The ALJ further noted that Plaintiff testified at the May 2017 hearing that she suffered from one to two blackouts per week, but the ALJ reasoned that no evidence in the record or objective findings confirmed these blackouts. (R. at 844.)

The ALJ did not err in concluding that Plaintiff's blackouts were not a "medically determinable" impairment. To be "medically determinable," an impairment must be established by objective medical evidence, such as laboratory findings or medical observations. §§ 404.1521, 416.921, 404.1502(f) & (g), 416.902(f) & (g). Plaintiff has not identified any laboratory finding or other medical observation to confirm her blackouts. As noted by the ALJ, neurological and brain examinations revealed normal findings. (*See, e.g.,* R. at 732–34 ("This outpatient ambulatory EEG shows normal awake and sleep patterns.").)

Plaintiff also cannot rely on Dr. Rivera's opinion or Plaintiff's own testimony to establish that her blackouts were a "medically determinable" impairment. Although Dr. Rivera asserted that Plaintiff's blackouts were a medical impairment, the regulations state that an ALJ "will not use . . . a medical opinion to establish the existence of an impairment(s)." §§ 404.1521, 416.921. Rather, the regulations require laboratory findings and medical observations to establish a "medically determinable" impairment. §§ 404.1502(f) & (g), 416.902(f) & (g). Similarly, an ALJ cannot rely on Plaintiff's statements to demonstrate the existence of a "medically determinable" impairment. *See* §§ 404.1502(f) & (g), 416.902(f) & (g), 404.1521, 416.921. Thus, the ALJ did not err in concluding that Plaintiff's blackouts were not a "medically determinable" impairment.

Plaintiff nonetheless asserts three arguments alleging the ALJ erred at step two. First, Plaintiff contends the ALJ erred by requiring medical observation of her blackouts. (Pl.'s Mem. at 13.) As an initial matter, as discussed above, the ALJ did not rely solely on the absence of medical observation of the blackouts to conclude that Plaintiff's blackouts were not medically

determinable. (R. at 844 (noting unremarkable or normal neurological examinations, MRI, electroencephalogram).) Further, Plaintiff's argument ignores the requirement that an impairment be "medically determinable," which "must be established by *objective medical evidence* from an acceptable medical source." §§ 404.1521, 416.921 (emphasis added). "[O]bjective medical evidence" means "laboratory findings" or "abnormalities that can be *observed*, apart from your statements (symptoms)." §§ 404.1502(f) & (g), 416.902(f) & (g) (emphasis added). Thus, the regulations explicitly instruct the ALJ to require medical observation, or some other form of "objective medical evidence," to establish that Plaintiff's blackouts were "medically determinable." For this reason, the ALJ did not err in noting that Plaintiff's blackouts had not been observed.

Second, Plaintiff contends that the ALJ should have recognized that Plaintiff's lupus was an impairment "that could cause her blackouts." (Pl.'s Mem. at 14.) This argument, however, is not pertinent to step two, which asks the ALJ to "consider the medical severity of [Plaintiff's] *impairment(s)*"—not the severity of Plaintiff's *symptoms*. *See* §§ 404.1520(a)(4)(ii), 416.1520(a)(4)(ii) (emphasis added). Thus, at step two, the ALJ was tasked with determining whether Plaintiff's impairments, such as lupus, were medically determinable and severe. If lupus "cause[s]" blackouts as Plaintiff alleges, then such blackouts are a symptom of lupus—not an impairment in of itself.

Moreover, the ALJ determined that Plaintiff's lupus was in fact a severe and "medically determinable" impairment, which renders any purported error harmless. "An error at step two of the sequential evaluation process is harmless so long as the ALJ finds at least one severe impairment and considers an impairment's effects in subsequent steps of the sequential evaluation." *Candy A. C. v. Kijakazi*, No. 3:20CV107, 2021 WL 3627152, at *6 (E.D. Va. July 29,

2021), *report and recommendation adopted*, No. 3:20CV107, 2021 WL 3625305 (E.D. Va. Aug. 16, 2021). Here, the ALJ deemed Plaintiff's lupus a "medically determinable" and severe impairment, and the ALJ considered Plaintiff's blackouts when assessing Plaintiff's residual functional capacity. (R. at 851 (discussing Dr. Rivera's opinion regarding Plaintiff's blackouts).) Thus, any purported error at step two regarding Plaintiff's lupus is harmless.

Third and finally, Plaintiff—relying on medical records from her August 2016 visit with a neurologist—argues that she was diagnosed with blackouts because she suffers from complex partial seizures and was prescribed topiramate, which is a seizure-preventative drug. (Pl.'s Mem. at 14 (citing R. at 767).) According to Plaintiff, because of her seizures and her prescription, "her blackouts were not only medically determinable, but diagnosed by an acceptable medical source." (Pl.'s Mem. at 14.) The medical records cited by Plaintiff do not support Plaintiff's argument. The neurologist noted Plaintiff's statements about suffering from blackouts and accordingly ordered an MRI and an electroencephalogram. (R. at 767–69.) The neurologist explained that Plaintiff's blackouts were "convincing of *possible* seizure disorder, like complex partial seizure." (R. at 776 (emphasis added).) The neurologist thus decided: "Will start topiramate 50 mg PO BID for *suspected* complex partial seizures." (R. at 767 (emphasis added).) Another medical record from the same August 2016 visit also notes that the topiramate would be prescribed "in the meantime"—pending the results of the MRI and electroencephalogram. (R. at 776.) These terms—such as "possible" and "suspected"—are too uncertain to constitute a definitive medical diagnosis, and Plaintiff's topiramate prescription was precautionary. Thus, the August 2016 medical records do not demonstrate that Plaintiff was diagnosed with blackouts or that such blackouts were caused by one of Plaintiff's severe impairments.

In sum, the ALJ did not err in failing to acquire an updated medical opinion regarding Plaintiff's blackouts. Because the record lacked any objective medical evidence supporting Plaintiff's blackouts, the ALJ also did not err in concluding that Plaintiff's blackouts were not a "medically determinable" impairment.

## V. CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 18), GRANTS Defendant's Motion for Summary Judgment (ECF No. 20), and AFFIRMS the final decision of the Commissioner.

/s/ _____
Elizabeth W. Hanes
United States Magistrate Judge

Richmond, Virginia
Date: September 17, 2021